# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WYNDHAM VACATION OWNERSHIP, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM RESORT DEVELOPMENT CORPORATION, SHELL VACATIONS, LLC, SVC-WEST, LLC, SVC-AMERICANA, LLC and SVC-HAWAII, LLC,**

      **Plaintiffs,**

v.                                         Case No:   6:18-cv-2121-Orl-37LRH

**THE MONTGOMERY LAW FIRM, LLC, MONTGOMERY & NEWCOMB, LLC, M. SCOTT MONTGOMERY, ESQ., W. TODD NEWCOMB, ESQ., CLS, INC., ATLAS VACATION REMEDIES, LLC, PRINCIPAL TRANSFER GROUP, LLC, DONNELLY SNELLEN, JASON LEVI HEMINGWAY, MUTUAL RELEASE CORPORATION, DAN CHUDY, MATTHEW TUCKER and CATALYST CONSULTING FIRM LLC,**

      **Defendants.**

## ORDER
(And Direction to Clerk of Court)

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**     PLAINTIFFS' THIRD MOTION TO COMPEL AND FOR SANCTIONS   (Doc. No. 96)
>
> **FILED:**     April 5, 2019
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

> **MOTION:** **DEFENDANT PTG'S MOTION TO SUBMIT LIVE TESTIMONY REGARDING WYNDHAM'S THIRD MOTION TO COMPEL** (Doc. No. 122)
>
> **FILED:** **June 6, 2019**
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

## I. BACKGROUND.

On December 10, 2018, Plaintiffs filed a complaint against Defendants in the above-captioned case. Doc. No. 1. Plaintiffs are in the business of selling timeshares and allege that collectively, Defendants participate in an industry known as "timeshare exit." *Id.* ¶¶ 2–8, 58. Plaintiffs allege various counts against different Defendants, including: violations of the Lanham Act for false and misleading advertising (Counts I through IV), tortious interference with contractual relations (Counts V through VII), civil conspiracy (Count VIII), and violations of Florida's Deceptive and Unfair Trade Practices Act (Count IX). *Id.* at 46–70. Defendants Principal Transfer Group, LLC ("PTG"), Donnelly Snellen, CLS, Inc., Atlas Vacation Remedies, LLC ("Atlas"), Jason Levi Hemingway, W. Todd Newcomb, Esq., Montgomery & Newcomb, LLC ("M&N"), the Montgomery Law Firm, LLC, and M. Scott Montgomery, Esq., have all moved to dismiss the complaint. Doc. Nos. 31, 51, 56, 67. Those matters remaining pending before the Court.

On March 5, 2019, Plaintiffs filed an Emergency Motion to Compel Discovery. Doc. No. 59. Plaintiffs sought to compel Defendants Snellen, Hemingway, PTG, CLS, and Atlas to provide

complete responses to certain requests for production. *Id.* at 7–8.[1] The document requests at issue as to each of these Defendants provided:

> Documents sufficient to identify the location of the timeshare property of any present timeshare client of [the defendant] and any timeshare client that [the defendant] provided timeshare services to at any point in the last two years.
>
> Copies of files for any present timeshare clients of [the defendant] and any clients that [the defendant] provided timeshare services to at any point in the last two years.

As to only PTG, CLS, and Atlas, Plaintiffs also sought to compel:

> A list of all of [the defendant's] customers for the last 2 years, including their name and address.

*See* Doc. No. 59, at 7–8; Doc. No. 87, at 6–7.  Defendants, with the exception of Atlas,[2] each objected on two grounds: (1) production of "any privileged documents"; and (2) production of "any non-Florida documents." *Id.*

As to the privilege objection, the Court found Defendants' blanket objection to producing "any privileged documents" to be insufficient. Doc. No. 87, at 7. Accordingly, the objection based on privilege was overruled. *Id.* The Court ordered that, if Defendants continued to assert that the documents at issue were privileged, they must file a privilege log documenting in sufficient detail the validity of that assertion. *Id.* at 7–8.

Regarding the objection to producing "any non-Florida documents," Plaintiffs had failed to specifically address Defendants' objection. *Id.* at 8. Thus, Plaintiffs had not "demonstrated how document production of non-Florida timeshare client files, the location of non-Florida timeshare clients, or a list of Defendants' non-Florida timeshare customers are relevant to this case." *Id.*

---

[1] For purposes of this Order, Snellen, Hemingway, PTG, CLS, and Atlas are collectively referred to as "Defendants" throughout.

[2] Plaintiffs acknowledged that defense counsel ultimately responded that Atlas had no documents responsive to the requests at issue. *See* Doc. No. 59, at 4; Doc. No. 87, at 7.

Accordingly, the Court found Defendants' objection to producing "non-Florida documents" well taken. *Id.* The remainder of Defendants' objections were overruled. *Id.* at 8–10.

Based on the foregoing, the Court granted in part and denied in part the Emergency Motion to Compel. *Id.* at 11 (referred to herein as the "Discovery Order"). The Court ordered Defendants, on or before March 28, 2019, to "produce for inspection and copying the remaining documents responsive to [the document requests at issue], with the exception of any non-Florida documents." *Id.* To the extent that Defendants still wished to rely on a privilege objection, the Court ordered Defendants to submit a privilege log to support each objection, containing evidence and legal authority, on or before March 28, 2019. *Id.* To date, Defendants have not filed a privilege log in this case.

On April 5, 2019, Plaintiffs filed their Third[3] Motion to Compel and for Sanctions, Doc. No. 96, in which they contend that Defendants have failed to comply with the Court's Discovery Order. The resolution of this motion requires consideration of (1) Plaintiffs' Third Motion to Compel and for Sanctions (Doc. No. 96);[4] (2) Defendants' Brief in Opposition to Wyndham's Third Motion to Compel (Doc. No. 116); (3) Plaintiffs' Reply Brief in Support of Third Motion to Compel and for Sanctions (Doc. No. 121); (4) Defendant PTG's Motion to Submit Live Testimony Regarding Wyndham's Third Motion to Compel (Doc. No. 122); (5) Plaintiffs' Response in Opposition to

---

[3] Plaintiffs had filed a second motion to compel directed at Defendants' non-compliance with the Discovery Order. Doc. No. 93. That motion was denied as moot because Plaintiffs filed the instant motion as a substitute for the second motion to compel to include allegations regarding subsequent events that Plaintiffs alleged had occurred. Doc. No. 96, at 2 n.1; Doc. No. 98.

[4] After Plaintiffs filed their Third Motion to Compel and for Sanctions (Doc. No. 96), the Court granted Plaintiffs' unopposed motion for leave to file under seal an unredacted version of the motion to compel, which remains pending as a motion, *see* Doc. No. 110. Because resolution of the motion to compel does not require explicit reference to the contents of the sealed material, resolution will occur on the first-filed motion on the docket, *see* Doc. No. 96. Accordingly, the **Clerk of Court** is **DIRECTED** to **terminate** the pending motion filed under seal at Doc. No. 110.

Defendant PTG's Motion to Submit Live Testimony Regarding Wyndham's Third Motion to Compel (Doc. No. 126); (6) and all accompanying exhibits to each filing.

The motions were referred to the undersigned, and the matter is ripe for review.

## II.   ANALYSIS.

### A.   Plaintiffs' Third Motion to Compel and for Sanctions.

In the motion, Plaintiffs contend that: (1) Defendants failed to comply with the Discovery Order because no documents and no privilege log were produced on or before March 28, 2019; (2) the belatedly produced documents were insufficient because the list of customers produced by Defendants does not include names and addresses; (3) the list of customers produced by Defendants include clients who they bill in Florida, but does not include documents sufficient to identify Florida-located timeshare interests owned by Defendants' clients; (3) Defendants only produced some customer files and such production was incomplete; and (4) sanctions are appropriate for Defendants' flagrant refusal to comply with the Discovery Order. Doc. No. 96. Each of these contentions, and the issues raised by Defendants' responses thereto, will be addressed in turn.

#### 1.   *Failure to Timely Comply with the Court's Order.*

Plaintiffs first contend that Defendants failed to timely comply with the Court's Discovery Order (Doc. No. 87), which required Defendants to produce the required responsive documents on or before March 28, 2019. Doc. No. 96, at 3–4. By March 28, 2019, Defendants had not produced any responsive documents in compliance with the Court's Order. *Id.* at 3. Thereafter, counsel for Plaintiffs contacted counsel for Defendants on April 3, 2019 to inquire about the document production. *Id.* at 3. Counsel for Defendants assured that compliance with the Discovery Order would take place by the end of the day. *Id.* When that did not happen, counsel for Plaintiffs again conferred with Defendants' counsel on the morning of April 4, 2019, and Defendants' counsel this

time promised to comply by 10:00 a.m. that same morning. *Id.* at 3–4. Unfortunately, Defendants again failed to meet this new deadline and, as a result, Plaintiffs moved to compel at 10:28 a.m. on April 4, 2019. *Id.* at 4; *see* Doc. No. 93.

Minutes after Plaintiffs filed the motion, counsel for Defendants sent counsel for Plaintiffs an email with attachments, which included 3 PDF files consisting of 5 pages. Doc. No. 96, at 4–5, *see* Doc. Nos. 96-3; 116-7; 116-8; 116-9. Plaintiffs notified Defendants that the production was deficient. Doc. No. 96, at 5; *see* Doc. No. 96-5. Later that night, counsel for Defendants sent counsel for Plaintiffs two emails providing a link to a DropBox account where certain files had been uploaded for production. Doc. No. 96, at 5; *see* Doc. No. 96-8. Plaintiffs contend that said production is still insufficient. Doc. No. 96, at 5.

In their response, Defendants do not dispute that they failed to produce any files prior to April 4, 2019. Doc. No. 116, at 11.[5] Defendants make a passing remark that "Wyndham agreed that the documents could be produced on April 4th, and all documents were produced on April 4th." *Id.* They do not expound on this statement. Nor does it appear that Plaintiffs agreed to belated production. *See* Doc. No. 96-5, at 1 (April 4, 2019 email from Plaintiffs' counsel to Defendants' counsel stating "based on the timestamps on the documents as to when they were generated, it is apparent you made no effort to comply with the Court's order prior to today").

The Court's Discovery Order clearly required production of the documents at issue on or before March 28, 2019. Doc. No. 87, at 11. Defendants did not file a motion to extend this deadline, and they have not otherwise demonstrated that their untimely production of the documents

---

[5] In a declaration accompanying the response to the motion to compel, Defendant Hemingway states, "I realize now that our production in this case was late, and I do apologize to the Court for any inconvenience that this may have caused." Doc. No. 116-1, at 2.

at issue was warranted or excused.  *See* Doc. Nos. 116, 122.    Accordingly, the Court agrees with Plaintiffs that Defendants have failed to timely comply with the Court's Discovery Order, which makes the imposition of sanctions against Defendants warranted.  *See* Fed. R. Civ. P. 37(b).  The applicable sanctions will be addressed below.

        2.       *April 4, 2019 Production.*

Plaintiffs' next argument pertains to the requests for production that sought, in part:

> A list of all of [the defendant's] customers for the last 2 years, including their name and address.

*See* Doc. No. 59, at 7–8; Doc. No. 87, at 6–7.    The Discovery Order limited the required production by Defendants to all responsive documents to this request "with the exception of any non-Florida documents."   Doc. No. 87, at 11.

Plaintiffs contend that while the five pages of documents produced in PDF format by Defendants on April 4, 2019 could constitute a list of Defendants' customers over the last two years, the documents are insufficient because they do not contain the customers' "names and addresses." Doc. No. 96, at 10.

Defendants' response on this point appears to be inconsistent.  First, Defendants state that "PTG does not have such a 'list' of PTG's customers that include their 'name and address.'"  Doc. No. 116, at 6 n.11.  However, then Defendants state that "each of the produced files does contain the name and address of PTG's Florida-based 'customer/client.'"  *Id.*  Thus, it appears that Defendants do, in fact, have the names and addresses of their customers.

The Court has reviewed the exhibit referenced by Plaintiffs, which was filed under seal by Plaintiffs (Doc. No. 111), and which was also filed in redacted form by Defendants (Doc. Nos. 116-7, 116-8, 116-9).  The list contains the name of the customer under a field titled, "Account Name," thus Defendants have partially complied with this document request.  However, Plaintiffs are

correct that the list does not include the customers' addresses, other than "Florida." Accordingly, Plaintiffs' motion on this point is well taken, and Defendants will be ordered, once again, to produce documents responsive to the above request. If Defendants dispute that such a client list exists, Defendants shall clearly inform Plaintiffs of such in written response to the request.

### 3. *Documents Identifying Location of Timeshare Properties.*

Plaintiffs also sought in their requests for production:

> Documents sufficient to identify the location of the timeshare property of any present timeshare client of [the defendant] and any timeshare client that [the defendant] provided timeshare services to at any point in the last two years.

*See* Doc. No. 59, at 7–8; Doc. No. 87, at 6–7. The Discovery Order limited the required production by Defendants to all responsive documents to this request "with the exception of any non-Florida documents." Doc. No. 87, at 11.

Plaintiffs argue that Defendants produced lists filtered by "Billing State/Province equals FL." Doc. No. 96, at 9–10; *see* Doc. Nos. 116-7, 116-8, 116-9. Thus, according to Plaintiffs, the list of customers produced contain only those who Defendants billed in Florida, not documents sufficient to identify Florida-located timeshare interests owned by Defendants' clients. Doc. No. 96, at 10.

It is unclear from Defendants' response what they are contending as to this particular argument. At one point, Defendants state that they do not maintain their files by the location of the timeshare property; thus, they state that they would have to produce all 2,465 of their customer files in order for Plaintiffs to make this determination. Doc. No. 116, at 7.

Because Defendants have not identified documents produced that were sufficient to identify the location of present timeshare clients of Defendants, or any timeshare clients to whom Defendants provided timeshare services in the past two years, with the exception of "non-Florida documents,"

Plaintiffs' contention is well taken. *See Walker v. OCalla-J Enters., Inc.*, No. 6:14-cv-450-Orl-31TBS, 2015 WL 12867059, at *2 (M.D. Fla. Jan. 12, 2015) (once the moving party makes a prima facie showing of the opposing party's discovery violation, "the non-moving party must show all reasonable efforts were made to comply with the court's order.  The non-moving party cannot prove impossibility to comply with the discovery order through mere assertions."). Accordingly, Defendants will be ordered, once again, to produce documents sufficient to identify the location of present timeshare clients of Defendants, or any timeshare clients to whom Defendants provided timeshare services in the past two years, with the exception of "non-Florida documents."

### 4. Clarification of "Non-Florida Documents."

Plaintiffs also argue that Defendants have failed to produce all of the customer files Defendants were required to produce pursuant to the Discovery Order. Doc. No. 96, at 11. The request for production at issue sought:

> Copies of files for any present timeshare clients of [the defendant] and any clients that [the defendant] provided timeshare services to at any point in the last two years.

*See* Doc. No. 59, at 7–8; Doc. No. 87, at 6–7. The Discovery Order limited the required production by Defendants to all responsive documents to this request "with the exception of any non-Florida documents." Doc. No. 87, at 11.

In the response, Defendants first state that the Court's Discovery Order did not require document production related to "non-Florida timeshare clients." Doc. No. 116, at 7. According to Defendants, then, the Court only ordered them to produce files for Florida residents. *Id.* Thus, Defendants contend that Plaintiffs are "not entitled to re-phrase the Court's language into the very different concept of 'a-client-who-does-not-live-in-Florida-but-owns-a-timeshare-in-Florida.'" *Id.*; *see* Doc. No. 116-1, at 4 (declaration of Hemingway stating same).

In reply, Plaintiffs dispute Defendants' classification of the Court's Discovery Order, arguing that it presents a fundamental re-writing of the Order from "non-Florida documents" to "non-Florida clients."

Because there appears to be a bona fide dispute as to what the Discovery Order required Defendants to produce, and what the Discovery Order excepted as far as "non-Florida documents," the Court will take the opportunity to clarify. Defendants' specific objection to the request for production was to producing "non-Florida documents." *See* Doc. No. 87, at 8. Based on that objection, the Court ultimately ordered Defendants to produce responsive documents with the exception of "non-Florida *documents*." *Id.* at 11. The Court did not sustain an objection to production related to "non-Florida *clients*."[6] *See id.* Accordingly, Defendants are required to respond to the requests for production as written, with the exception that Defendants shall not be required to produce non-Florida *documents*, which are documents related to their non-Florida customers who do not have, or did not have during the relevant period, timeshare interests in Florida. Stated differently, Defendants *are required to produce* customer files and documents related to (1) timeshare exit contracts entered into between Defendants and their clients in the state of Florida; as well as (2) customers of Defendants who currently have, or had/obtained during the limitations period applicable to this case, a timeshare interest in Florida, regardless of the customers' state of residence.[7]

---

[6] To be sure, in the Order, the Court noted that Plaintiffs had not demonstrated "how document production of non-Florida timeshare client files, the location of non-Florida timeshare clients, or a list of Defendants' non-Florida timeshare customers are relevant to this case." Doc. No. 87, at 8. However, Defendant had only objected to producing "non-Florida documents," and that is what the Court held were excepted from disclosure. Doc. No. 87, at 11.

[7] To be even more clear, this means Defendants must produce customer files and documents related to timeshare exit contracts they entered into with buyers or sellers who actually resided in Florida during the applicable limitations period, as well as documents related to customers who reside, for example, in Montana

Thus, to the extent that Defendants are withholding customer files and other documents based on the narrower definition of "non-Florida clients," Defendants shall produce the documents withheld that do not otherwise qualify for the exception of "non-Florida documents," as detailed above.

### 5. *Production of Customer Files.*

Plaintiffs next claim that only 129 out of 196 customer files disclosed to date have been produced by Defendants; all of the Florida-resident Wyndham customer files are missing; the files were not produced as kept in the ordinary course of business; many of the files were incomplete; and the files referred to Defendants Montgomery, Newcomb, and the law firm contain only a single, incomplete form. Doc. No. 96, at 11.[8]

Defendants respond that they have produced a total of 133 customer files. Doc. No. 116, at 8. Defendants further argue that they have produced all customer files currently in existence because, although each customer immediately receives a client number, a customer file is not yet opened until all relevant documents needed to populate such a file are received from the customer. *Id.*[9] They contend that all "relevant" files have been produced. *Id.* at 11. In his declaration, Hemingway avers that they have not withheld any "relevant" files. Doc. No. 116-1, at 3. In

---

or Timbuktu, but obtained a timeshare interest in Florida during the applicable limitations period. And "timeshare interest in Florida" means that the property is located within the State of Florida.

[8] Defendants argue that the total number of clients listed on the exhibit is 165, not 196. Doc. No. 116, at 8. It appears that some of the entries on the list submitted by Plaintiffs (Doc. No. 111, filed under seal), which is identical to the list Defendants attached to their response (Doc. Nos. 116-7, 116-8, 116-9) identify the same accounts more than once. Nonetheless, the number of files produced is not central to the dispute between the parties.

[9] Defendants also make irrelevant arguments that the dispute over the "missing" files has no relevance to the underlying motions to dismiss. Regardless of the pendency of the motions to dismiss, discovery in this matter is ongoing, and Plaintiffs' inquiries need not be limited to the issues being litigated in the motions to dismiss.

addition, Defendants state that Donnelly Snellen, Atlas Vacation Remedies, LLC, and CLS, Inc. have no files to produce. *Id.* at 5 n.10.

To the extent that Defendants are arguing that no additional files exist, the Court will accept that statement as true for purposes of this motion. Counsel representing Defendants "are officers of this court and subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose . . . ." *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). However, inasmuch as production of the "relevant" files by PTG excluded files relating to "non-Florida clients," rather than excluding those containing "non-Florida documents," as discussed above, Defendants must produce such files that were not excepted by the Discovery Order.

As to Plaintiffs' allegation that all Florida-resident Wyndham customer files are missing, Defendants dispute this assertion. Defendants state that they have produced the Wyndham customer files. Doc. No. 116, at 9. Again, the Court will accept this statement as true, *see Federated Mut. Ins. Co.*, 329 F.3d at 808 (citing *Burns*, 31 F.3d at 1095), because Plaintiffs have failed to demonstrate otherwise. However, as discussed above, if the production by Defendants excluded documents pertaining to "non-Florida clients," rather than "non-Florida documents," Defendants must produce such files that do not qualify for the exception of "non-Florida documents," as described above.

Regarding Plaintiffs' contention that the files were not produced in a manner in which they are kept in the ordinary course of business, Defendants state that they maintain the records in paper format. Thus, Defendants state that they retrieved the paper files and scanned them into electronic form. Doc. No. 116, at 9–10; *see also* Doc. No. 116-1, at 2 (Hemingway declaration stating that

all client files are kept in paper format in Springfield, Missouri, and that he had his staff scan the "relevant" documents for electronic transmission and production as a courtesy to Plaintiffs); Doc. No. 116-2 (pictures of paper files as discussed in Hemingway's declaration).

Plaintiffs' attempt to undermine Defendants' assertions that such files exist in other formats is unavailing. For example, Plaintiffs point to Hemingway's deposition testimony that some documents are electronically uploaded, but "not every document;" that PTG receives some documents electronically and some documents by physical mail; and that PTG has an electronic database of clients. Doc. No. 121, at 4. Plaintiffs also state that Defendants use Salesforce, an online customer relationship management platform. *Id.* at 4–5. None of these assertions negate Defendants' contention that customer *files* are maintained in paper format.

Regarding Plaintiffs' contention that the files were incomplete, Defendants assert that the files were produced in the manner in which they were kept; thus, if the file contained no correspondence when produced, then the file contained no correspondence. Defendants note that sometimes clients or potential clients do not return their paperwork to PTG. Doc. No. 116, at 10. Again, the Court will accept this statement as true for purposes of this motion. *See Federated Mut. Ins. Co.*, 329 F.3d at 808 (citing *Burns*, 31 F.3d at 1095). The Court cannot compel further production of documents that apparently do not exist. *See Calhoun v. Volusia Cty*., No. 6:04-cv-106-Orl-31DAB, 2007 WL 1796259, at *1 (M.D. Fla. June 20, 2007) ("[T]the Court cannot compel production of documents that do not exist."). Plaintiffs have provided no compelling evidence to the contrary. However, the Court reminds Defendants of their continuing obligation to supplement their discovery responses. *See* Fed. R. Civ. P. 26(e).

      6.    *Lack of Privilege Log.*

With respect to the files that were referred to Montgomery Law/Montgomery & Newcomb,

Plaintiffs state that most of the files produced only contained a single page, which is a portion of a timeshare referral form. Doc. No. 96, at 11. Plaintiffs also contend that Defendants failed to produce a privilege log on or before March 28, 2019, as required by the Court's Order. *Id.* at 12. Thus, Plaintiffs argue that Defendants have waived this privilege, even though, according to Plaintiffs, Defendants are attempting to rely on the attorney client privilege to refuse to produce complete customer files. *Id.*

Defendants dispute that the Montgomery Law files were produced with any documentation withheld on the basis of privilege because Defendants state that the files contained no attorney-client documents. Doc. No. 116, at 10. In reply, Plaintiffs attempt to counter this representation by pointing to an assertion of privilege by Defendant Hemingway as to client referral to Montgomery & Newcomb from another lawsuit filed in the Western District of Missouri. *See* Doc. No. 116-4, at 2.

Plaintiffs' reliance on this assertion of privilege in a case not pending before this Court is unavailing. Based on Defendants' representations that the files were produced without any documents withheld, and Plaintiffs' failure to dispute this assertion, Plaintiffs have not established that Defendants are in violation of the Court's Discovery Order on this point. *See Walker*, 2015 WL 12867059, at *2 (citation omitted) ("The moving party has the burden to make a prima facie showing that the opponent violated a court's discovery order."). However, to the extent that Defendants did not file a privilege log by the deadline set forth in the Discovery Order, Plaintiffs are correct that Defendants have waived any objections based on attorney client privilege to the document requests at issue.

7.   *Sanctions for Defendants' Violation of the Discovery Order.*

The Federal Rules of Civil Procedure provide that if a party or its agent fails to comply with a discovery order, the imposition of sanctions may be warranted, up to and including:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The possible sanctions include, but are not limited to, those listed in Rule 37(b). *See Walker*, 2015 WL 12867059, at *2. Moreover, in addition to or instead of the sanctions listed in Rule 37(b), the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In the motion, Plaintiffs ask that the Court sanction Defendants by (1) striking and/or denying the pending motions to dismiss; (2) entering an order establishing personal jurisdiction over Defendants; and (3) striking the declarations filed in support of the motions to dismiss. Doc. No. 96, at 16. Plaintiffs also ask that the Court award reasonable expenses and attorney's fees incurred in filing the instant motion. *Id.*

The Court declines Plaintiffs' request to impose sanctions related to the motions to dismiss. *See, e.g.*, *Gen. Produce, Inc. v. Raindrop Produce, Inc.*, No. 6:11-cv-8-Orl-22GJK, 2011 WL 13298719, at *2 (M.D. Fla. Sept. 9, 2011) ("[F]or a party who violates a discovery order, an extreme sanction requires a showing of a "willful or bad faith failure to obey a discovery order." (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993))); *see also Walker*, 2015 WL 12867059, at *1 ("Courts have broad discretion to impose sanctions under Rule 37."). While the Court is concerned about Defendants' failure to comply with its Discovery Order clearly setting forth a discovery response deadline, particularly when Defendants have not provided any good cause for this delay, the Court does not find that the delay was willful or in bad faith such that the extreme sanction of denying a motion to dismiss is warranted.

However, under Rule 37, the Court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [with court-ordered discovery], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Based on Defendants' failure to timely comply with the Court's Discovery Order, and Defendants' failure to even belatedly produce all of the documents ordered, as outlined in this Order, the Court has concluded that Rule 37 mandates an award of fees in Plaintiffs' favor. While in a prior Order awarding sanctions the Court directed the parties to reach agreement on the amount of fees to be awarded to Plaintiffs (Doc. No. 90), the Court finds that the parties have been engaging in extensive and costly motions practice, which has already congested this case. Therefore, in an effort to expedite at least the instant matter, and because the Court has not granted Plaintiffs all of the relief requested in their motion, the Court finds that levying a specific dollar amount as a sanction is appropriate. It is therefore **ORDERED** that Defendants Snellen, Hemingway, PTG, CLS, and

Atlas shall cause to be delivered to counsel for Plaintiffs $2,000.00 to compensate counsel for Plaintiffs for the costs and fees incurred in litigating this motion, which amount the undersigned has determined is reasonable in these circumstances.

  B. <u>Defendant PTG's Motion to Submit Live Testimony Regarding Wyndham's Third Motion to Compel</u>.

On June 6, 2019, Defendant PTG filed a Motion to Submit Live Testimony Regarding Wyndham's Third Motion to Compel. Doc. No. 122. In the motion, PTG argues that Plaintiffs improperly accused Defendants of perjury in the reply to the response to the motion, and that Plaintiffs had improperly raised new arguments in the reply. *Id.* at 1. Accordingly, Defendant PTG requests a hearing to proffer testimony that it contends would demonstrate that: (1) all of PTG's original documents were created in paper format; (2) these paper document originals were kept in paper files; and (3) only some of the paper originals were scanned into the computer. *Id.* The motion is due to be denied.[10]

First, in substance, this document is a sur-reply to Plaintiffs' reply. Defendants did not seek leave of Court to file a sur-reply. Second, as discussed above, the Court will accept defense counsel's assertion, as an officer of the court, that Defendants maintain files in paper format and they have produced all "relevant"[11] files in their possession that exist in paper format. Accordingly, a hearing on such contentions is unnecessary.

### III. CONCLUSION.

Based on the foregoing, it is **ORDERED** as follows:

---

[10] PTG also makes argument regarding a certain privilege log from another case that has no bearing on the issues in the present case and will not be given further consideration. Doc. No. 122, at 1–2.

[11] As discussed above, what Defendants thought was "relevant" did not include any files related to "non-Florida *clients*." The only excepted documents in the Discovery Order related to "non-Florida *documents*." Accordingly, to the extent that Defendants have not produced files that would not be excepted as "non-Florida documents," such files must be produced.

1. Plaintiffs' Third Motion to Compel and for Sanctions (Doc. No. 96) is **GRANTED in part and DENIED in PART**.

2. On or before **July 16, 2019**, Defendants shall produce the documents responsive to Plaintiffs' request for production as outlined in the Discovery Order and this Order as follows:

   - A list of all of Defendants' customers for the last 2 years, which includes the customer's name and address;

   - Documents sufficient to identify the location of present timeshare clients of Defendants, or any timeshare clients to whom Defendants provided timeshare services in the past two years, with the exception of "non-Florida documents" as defined in this Order; and

   - Customer files and associated documents not produced to date, with the exception of "non-Florida documents" relating to clients who do not have, or did not have during the relevant period, a timeshare interest in Florida.

3. On or before **July 16, 2019**, Defendants shall cause to be delivered to counsel for Plaintiffs $2,000.00 to compensate Plaintiffs for the costs and fees incurred in filing the Third Motion to Compel and for Sanctions.

4. Defendant PTG's Motion to Submit Live Testimony Regarding Wyndham's Third Motion to Compel (Doc. No. 122) is **DENIED**.

5. The Clerk of Court is **DIRECTED** to terminate the pending Third Motion to Compel and for Sanctions filed under seal (Doc. No. 110).

**DONE** and **ORDERED** in Orlando, Florida on July 2, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties