UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION
OWNERSHIP, INC.; WYNDHAM
VACATION RESORTS, INC.;
WYNDHAM RESORT DEVELOPMENT
CORPORATION; SHELL VACATIONS,
LLC; SVC-WEST, LLC; SVC-
AMERICANA, LLC; and SVC-HAWAII,
LLC,

      Plaintiffs,

v.                                                                                    Case No. 6:18-cv-2121-Orl-37LRH

THE MONTGOMERY LAW FIRM, LLC;
MONTGOMERY & NEWCOMB, LLC;
M. SCOTT MONTGOMERY, ESQ.; W.
TODD NEWCOMB, ESQ.; CLS, INC.;
ATLAS VACATION REMEDIES, LLC;
PRINCIPAL TRANSFER GROUP, LLC;
DONNELLY SNELLEN; JASON LEVI
HEMINGWAY; MUTUAL RELEASE
CORPORATION; DAN CHUDY;
MATTHEW TUCKER; and CATALYST
CONSULTING FIRM LLC,

      Defendant.

_____

## ORDER

Before the Court is Defendants Principal Transfer Group, LLC, Donnelly Snellen,

and CLS, Inc.'s motion to dismiss for lack of personal jurisdiction or improper venue or

to transfer venue. (Doc. 31 ("**Motion**").) Defendants Atlas Vacation Remedies, LLC, Jason

Hemingway, W. Todd Newcomb, M. Scott Montgomery, Montgomery Law Firm, LLC,

and Montgomery & Newcomb, LLC filed supplements to join the pending Motion[1] (Docs. 51, 56, 67) and Plaintiffs responded (Doc. 100). On review, the Motion is denied.

## I.   BACKGROUND

This action centers on the "timeshare exit" industry. (*See* Doc. 1, ¶¶ 6–22.) Plaintiffs are suing Defendants for interfering with their timeshare contracts and timeshare business. (*See id.*) Plaintiffs are Florida-based entities that manage and operate timeshare properties throughout the world and contract with individuals for timeshare ownership. (*See id.* ¶¶ 1–5; 25–31.) Defendants are Missouri-based law firms, timeshare exit companies, consulting firms, and their employees who work to help dissatisfied timeshare owners rid themselves of their timeshare contracts. (*See id.* ¶¶ 32–50.) Defendants can be categorized into four groups: (1) **Montgomery Law Defendants** include the Montgomery Law Firm, LLC ("**Montgomery Law**") and Montgomery & Newcomb, LLC ("**M&N Law**"), two law firms, and lawyers M. Scott Montgomery, Esq. and W. Todd Newcomb, Esq. (*id.* ¶¶ 33–37); (2) **CLS Defendants** include CLS, Inc. ("**CLS**"), Atlas Vacation Remedies, LLC ("**Atlas**"), Principal Transfer Group, LLC ("**PTG**"), a timeshare exit company and its two alter-egos, and two of its employees, Donnelly Snellen, and Jason Levi Hemingway (*id.* ¶¶ 38–45); (3) **MRC Defendants** include Mutual Release Corporation ("**MRC**"), a timeshare exit company, and two of its

---

[1] The "supplements" are intended to add additional Defendants to the Motion; they do not present additional argument. (Docs. *See* Docs. 31, 51, 56, 67.) Although, the supplements are improper under Local Rule 3.01, and Plaintiffs highlight the pitfalls of permitting such impermissible filings (*see* Doc. 100, pp. 9–10), the Court will nonetheless consider the Defendants added via the three supplements to be additional parties to the Motion.

employees, Dan Chudy, and Matthew Tucker (*id.* ¶¶ 46–49); and (4) Catalyst is an advertising consulting firm (*id.* ¶¶ 50, 109–110).

Plaintiffs' allege Defendants "instruct, deceive, induce, or persuade" Plaintiffs' timeshare owners to stop making their timeshare payments, ensuring the timeshare owners go into default and the properties are foreclosed on. (*Id.* ¶¶ 13–22.) Defendants use false and misleading advertising to induce timeshare owners to breach their timeshare contracts. (*Id.* ¶¶ 6–21, 92–138.) For example, they advertise that timeshare owners have three options:



(*Id.* ¶ 8.) And, if timeshare owners use their services, Defendants guarantee successful exit from their timeshare contracts—option 3—but do not advise the timeshare owners of the consequences of ceasing payments, i.e. default and foreclosure. (*Id.* 9–22.) Although the Defendants play different roles in the described scheme, their conduct is intertwined. (*Id.* ¶¶ 60–86; 92–138.) The CLS Defendants, MRC Defendants, and Catalyst use various advertising methods, including online, telemarketing, direct mailing, and in-person sales presentations, to target and solicit Plaintiffs' timeshare owners to use their timeshare exit

services. (*Id.* ¶¶ 92–138.) Those advertisements state that the CLS Defendants, MRC Defendants, or Catalyst retain lawyers to aid in canceling the timeshare contracts, and the Montgomery Law Defendants fill that role. (*Id.* ¶¶ 75–78.) The CLS Defendants, MRC Defendants, and Catalyst, then refer clients to the Montgomery Law Defendants, who are aware of the advertisements and send demand letters on behalf of the timeshare owners to Plaintiffs. (*Id.* ¶¶ 75–82.) After sending the demand letters, Defendants take almost no further action, hoping that the threat of litigation will convince Plaintiffs' to cancel or release the timeshare owners from their contracts. (*Id.* ¶ 83.)

Based on Defendants' alleged harm to Plaintiffs' businesses and relationships with timeshare owners, Plaintiffs sought damages and injunctive relief. (*Id.* 22–24.) Plaintiffs bring claims for: (1) false and misleading advertising and contributory advertising, 15 U.S.C. § 1125(a)(1); (2) tortious interference with contractual relations; (3) civil conspiracy; and (4) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("**FDUTPA**"). (*Id.* ¶¶ 155–274.) In response, several Defendants answered (Docs. 12, 83, 84, 89) and, including the supplements, the CLS Defendants and Montgomery Law Defendants (collectively, "**Movants**") moved to dismiss the Complaint for lack of personal jurisdiction or improper venue or to transfer venue. (Doc. 31, 51, 56, 67). With Plaintiffs' response (Doc. 100), the matter is ripe.

## II.   LEGAL STANDARDS

A party may seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need only allege sufficient facts to make out a prima facie case of

jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If unrefuted, courts accept the well-pled facts as true. *Id.* at 1215. However, if the defendant submits non-conclusory declarations refuting the well-pled jurisdictional facts, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Where the record evidence conflicts, courts must "construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

Rule 12(b)(3) offers another basis for dismissal. Under Rule 12(b)(3), a party may move to dismiss a case based on "improper venue." When a defendant invokes this provision, the plaintiff must show that the venue selected is proper. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). All facts alleged are accepted as true, unless controverted by the defendant's evidence. *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990); *Delong*, 840 F.2d at 845. And courts may consider evidence outside of the pleadings and may make findings of fact to resolve the motion. *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1314 n.1 (11th Cir. 2013) (internal citations omitted). When affidavits conflict, a court "gives greater weight to the plaintiff's version of the jurisdictional facts" and "construe[s] such facts in the light most favorable to the plaintiff." *Home Ins. Co.*, 896 F.2d at 1355.

## III.   DISCUSSION

Movants challenge the Court's personal jurisdiction over them and the propriety of venue here. (Docs. 31, 51, 56, 67.) Specifically, they argue this Court does not have personal jurisdiction over them because their actions, taken outside this venue with

limited connection to Florida, cannot establish personal jurisdiction. (Doc. 31, pp. 5–18.) Movants also argue venue is proper in the U.S. District Court for the Western District of Missouri, so dismissal or transfer is warranted. (*Id.* at 17–21.) The Court takes up each argument.

### A.    Personal Jurisdiction

First is whether the Court has personal jurisdiction over Movants, as Missouri citizens. (Doc. 31, pp. 7–17.) To establish personal jurisdiction over a non-resident defendant, a plaintiff need only make out a prima facie case for jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant challenges those allegations, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). To the extent there is a dispute, the Court must "construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). First, there must be a basis for jurisdiction under Florida's long-arm statute, which confers either general or specific personal jurisdiction over the nonresident. *See id.* (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 919 (11th Cir. 1990)); *see* Fla. Stat. § 48.193(1). Second, exercising personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment so "maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### 1. Florida's Long-Arm Statute

At the outset, the Court notes Plaintiffs aren't claiming general personal jurisdiction in Florida; rather, they claim specific personal jurisdiction based on Movants' tortious conduct. (Doc. 1, ¶ 52; Doc. 100, pp. 10–14.) So Movants' arguments about general personal jurisdiction and specific personal jurisdiction based on personal injury or damage to physical property are of no consequence.[2] (*See* Doc. 31, pp. 13–14.) The Court dispenses of that inquiry and narrows its analysis to whether specific personal jurisdiction exists based on the Moving Defendants tortious conduct.

Florida's long-arm statute provides for specific personal jurisdiction over any action arising from a person "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" or "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a). A defendant need not be physically present when committing the tort. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, Florida's long-arm statute applies "to defendants committing tortious acts outside the state that cause injury in Florida." *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955 (11th Cir. 2010)[3] (collecting cases "firmly establish[ing] precedent"

---

[2] The same is true for Movant's argument regarding economic injures. (*See* Doc. 31, p. 12.) Because Plaintiffs do not attempt to establish personal jurisdiction under Florida Statute 48.193(1)(f), Movants argument on that point is irrelevant.

[3] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

that Florida's long-arm statute applies to "tortious acts outside the state that cause injury in Florida"). "The threshold inquiry that must be determined is whether the allegations of the complaint state a cause of action." *Wendt*, 822 So. 2d at 1260. If the complaint does, then it must be determined whether the alleged cause of action arises from the conduct. *Id.*

### i.      State a Cause of Action

The Court begins with whether Plaintiffs adequately stated a cause of action against Movants. Plaintiffs bring four distinct claims against Movants: (1) false advertising under the Lanham Act; (2) tortious interference with contractual relations; (3) civil conspiracy; and (4) FDUPTA violations (*see* Doc. 1, ¶¶ 155–274), which all constitute "tortious actions" under Florida's long-arm statute.[4] Movants only contend Plaintiffs failed to state a claim for tortious interference with contractual relations and civil conspiracy; they advance no argument regarding the Lanham Act or FDUPTA claims. (*See* Doc. 31, pp. 9–12.) So the Court only considers whether Plaintiffs stated a cause of action for tortious interference and civil conspiracy here.

---

[4] *See, e.g.*, *Richard Boyd Enterprises, Inc. v. Aquarium Pharm., Inc.*, No. 09-22301-CIV, 2010 WL 11448226, at *4–*5 (S.D. Fla. Feb. 5, 2010) (holding that alleged violations of the Lanham Act and FDUPTA constituted tortious acts under Florida's long-arm statute); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1332 (S.D. Fla. 2010) (finding the tortious interference satisfied Florida's long-arm statute where the defendants' tortious conduct caused injury in Florida); *Wilcox v. Stout*, 637 So.2d 335, 337 (Fla. 2d DCA 1994) (holding that, if plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction).

First is Plaintiffs' tortious interference claim. (Doc. 1, ¶¶ 202–249.) To plead a claim for tortious interference with contractual relations, a plaintiff must allege that: (1) a contract exists; (2) the defendant knew of the contract; (3) the defendant intentionally breached the contract; (4) there was no justification or privilege for the breach; and (5) plaintiff suffered damages. *Johns Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)). Here, Plaintiffs allege Movants knew of their contractual relationships with timeshare owners and unjustifiably induced timeshare owners to breach or terminate their contracts, harming Plaintiffs. (Doc. 1, ¶¶ 202–217.) Specifically, Plaintiffs contend Movants used false and misleading advertisements to solicit and persuade timeshare owners to hire Movants to aid in ridding them of their timeshare contracts and promising illusory and fraudulent services. (*Id.*) Movants counter that Plaintiffs fail to state a claim for tortious interference because they did not identify individual timeshare owners, Movants were working as agents on behalf of timeshare owners, and the timeshare owners were predisposed to breach the contracts. (Doc. 31, pp. 3, 11–12, 19.) The Court agrees with Plaintiffs.

Movants' arguments were raised and rejected by the Court in an analogous case. *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *3–4 (M.D. Fla. Oct. 24, 2018). As explained in *Orange Lake*, Plaintiffs' need not identify individual timeshare owners at this stage of the proceedings. *Id.* at *3. And Movants' agency status does not resolve whether Plaintiffs' stated a potential claim because an agent is not necessarily immune from liability for tortious interference. *Id.* at

*4 (explaining that "an agent's privilege to interfere with the contracts of its principal is not absolute." (citing *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987))). Finally, whether the timeshare owners were predisposed to breach their timeshare contracts is irrelevant to whether Plaintiffs' have stated a claim against Movants; it is a fact-intensive inquiry inappropriate for the pleading stage. *Orange Lake*, 2018 WL 5279135 at *4. So Plaintiffs adequately stated a claim for tortious interference with contractual relations.

Next is Plaintiffs' civil conspiracy claim. (Doc. 1, ¶¶ 250–262.) The elements of a civil conspiracy cause of action are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) performing an overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of the acts under the conspiracy. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). Each co-conspirator does not have to commit an act to further the conspiracy; rather, it is sufficient that each conspirator knows about the scheme and aids in some way. *MP, LLC v. Sterling Holding, LLC*, 231 So. 3d 517, 522 (Fla. 3d DCA 2017).

Plaintiffs allege Movants, along with the other Defendants, worked in concert to unlawfully interfere with and induce timeshare owners to breach their timeshare contracts with Plaintiffs, which harmed Plaintiffs financially. (Doc. 1, ¶¶ 6, 250–261.) Specifically, the CLS Defendants, MRC Defendants, and Catalyst all share the same office, share common ownership or control, split fees, and use identical or nearly identical false and misleading advertisements. (*Id.* ¶¶ 60–74.) The Montgomery Law Defendants are aware of the advertisements and agreed to represent the timeshare owner clients CLS Defendants, MRC Defendants, and Catalyst solicit with false advertisements. (*Id.* ¶¶ 75–

86.) Movants' only argument—that Plaintiffs' civil conspiracy pleadings are conclusory—is wholly unavailing. (Doc. 31, p. 15.) Plaintiffs pled a cause of action for civil conspiracy.

### ii.    Connection to Florida

Next, the Court turns to Florida's long-arm statute "connexity" requirement: whether there is a causal connection between Movants' alleged conduct in Florida and Plaintiffs' causes of action. *See Wendt*, 822 So. 2d at 1260. Plaintiffs allege specific personal jurisdiction exists regarding all claims because Defendants' tortious actions were directed at consumers in Florida. (Doc. 1, ¶ 52.) And Plaintiffs are based in Orlando, Florida, so Movants' conduct caused Plaintiffs injury in Florida. (*Id.* ¶¶ 25–31.) "[U]nder Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Allegations that a Florida company suffered injury from tortious conduct will state a prima facie case for personal jurisdiction under Florida Statute § 48.193(1)(a)(2). *See, e.g.*, *Elandia Intern.*, 690 F. Supp. 2d at 1332.

Here, Plaintiffs are Florida-based entities and allege that Movants false and misleading advertisements induced timeshare owners to stop making their payments, which caused Plaintiffs injury in Florida. (Doc. 1, ¶¶ 6–31.) Plaintiffs establish a prima facie case for exercising personal jurisdiction over Movants.

With that, the burden shifts to Movants to challenge jurisdiction by submitting affidavits or other evidence to rebut Plaintiffs' allegations. Movants, relying on several conclusory affidavits, contend they targeted no Florida entity and lack the requisite

connection to Florida for this Court to exercise personal jurisdiction over them. (Doc. 31, pp. 7–18; *see also* Docs. 31–1, 31–2, 51-1, 51-2, 56-1, 67-7.) But Movants "cannot defeat personal jurisdiction based on tortious conduct by filing an affidavit that attests [Movants have] not conducted business in Florida and [do] not have any business contacts in the State." *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS, 2018 WL 7364591, at *7 (M.D. Fla. Sept. 26, 2018) (collecting cases); *see also Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 F. App'x 741 (11th Cir. 2006) (explaining that "conclusory assertions that the defendant is not subject to jurisdiction" are insufficient to shift the burden back to the plaintiff to submit evidence in support of jurisdiction). And, as discussed *supra*, Movants need not have connection to Florida to satisfy Florida's long-arm statute—"a tortious act committed outside of the state of Florida resulting in injury to a Florida resident confers personal jurisdiction under Fla. Stat. [§ 48.193 (1)(a)(2)]." *Ultra-Images, LLC v. Franclemont*, No. 05-60538-CIV-MARRA/SELTZER, 2005 WL 8154574, at *3 (S.D. Fla. Dec. 27, 2005). Movants failed to meet their burden. Florida's long-arm statute is satisfied.[5]

---

[5] Even assuming *arguendo* that the burden shifted back to Plaintiffs', Plaintiffs submitted additional evidence establishing the connection between Movants' conduct in Florida and this action including, *inter alia*, that: (1) Catalyst operates in-person sales presentations in Florida on behalf of PTG; (2) Patrice Hayes, a Florida resident, was solicited via mail to attend an in-person presentation in Florida, and the advertisement falsely alleged that she could recover 100% of the money she paid for her timeshare; (3) Defendants informed Mary Clapp, a Florida attorney who worked in concert with Defendants, that they would be traveling to Florida, communicated with Ms. Clapp while she was in Florida, and are soliciting Ms. Clapp's clients; and (4) PTG has powers of attorney for Florida residents and acquires Florida clients through in-person presentations in Florida. (Doc. 100, pp. 4–9.) Thus, Plaintiffs' provided additional evidence to satisfy the connexity requirement.

## 2.   Due Process

With that, the Court turns to the second part of the analysis—whether exercising personal jurisdiction over Movants offends due process. To determine whether exercising specific personal jurisdiction comports with due process, courts employ a three-part test, which examines:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum [("**Relatedness Prong**")]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [("**Purposeful Availment Prong**")]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [("**Fair Play Prong**")].

*Louis Vuitton*, 736 F.3d at 1355 (citation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

First is the Relatedness Prong. The Relatedness Prong concerns whether a "plaintiff's claim . . . arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (internal quotations omitted). This inquiry focuses on "the direct causal relationship among the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotations and citation omitted). Plaintiffs assert that their claims arise from Movants' purposeful actions directed at Florida, including: (1)

operating and acquiring clients at in-person sales presentations in Florida; (2) sending direct mailing to Florida residents advertising in-person presentations in Florida; (3) working with a Florida-based attorney and soliciting her clients; and (4) sending demand letters to Plaintiffs in Florida. (Doc. 100, pp. 1–2, 4–7, 15–17.) Plaintiffs satisfied the Relatedness Prong.

Next is the Purposeful Availment Prong. For claims involving intentional torts there are two applicable tests to assess whether Plaintiffs satisfied this prong: (1) the "effects" test as described in *Calder v.* Jones, 465 U.S. 783 (1984); or (2) the traditional purposeful availment test. *See Louis Vuitton*, 736 F.3d at 1356–57. Under the "effects" test, the nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286.

Plaintiffs' claims are all intentional torts, so the first requirement of the effects test is satisfied. (*See* Doc. 1, ¶¶ 155–274.) Next, simply aiming conduct at Plaintiffs who reside in Florida cannot establish the second requirement of the effects test. *See Walden v. Flores*, 571 U.S. 277 (2014). But Movants conduct rises above that level—they arranged in-person sales presentations in Florida, sent direct mailings and solicited Florida citizens, and worked with a Florida attorney. (Doc. 100, pp. 4–7.) And, given that conduct, Movants should have anticipated that any resulting injuries would occur in Florida, where

Plaintiffs are located. *See* Calder, 465 U.S. at 789-90. Therefore, under the "effects" test, the Purposeful Availment Prong is met.[6]

Last is the Fair Play Prong. With the first two prongs satisfied, Movants "must make a compelling case that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. The factors, as applied here, are: (1) the burden on Movants; (2) Florida's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interests of Florida and Missouri in furthering fundamental social policies. *Sloss v. Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007) (citations omitted).

Applying these factors, the Court finds Movants failed to show that exercising jurisdiction here would violate traditional notions of fair play and substantial justice. First, Movants have offered no basis for concluding that adjudicating this case in Florida would unconstitutionally burden them. (*See* Doc. 31, pp. 16–17.) Second, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Third, Plaintiffs have an interest in obtaining relief in Florida, where their alleged injuries

---

[6] The Eleventh Circuit has also applied the traditional minimum contacts test in intentional tort cases. *See, e.g., Sec. Exchange Comm'n v. Carillo*, 115 F.2d 1540, 1542 (11th Cir. 1997). However, the Court need not apply that test here because the effects test is satisfied. *See Lovelady*, 544 F.3d at 1286-88 (discussing both tests but only applying the *Calder* "effects test").

occurred. *See id.* (finding that a "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of resident to obtain a remedy"). Last, the Court sees no reason the interests of the interstate judicial system or shared interest of Florida or Missouri would be harmed by adjudicating this dispute. So exercising personal jurisdiction over Movants would not offend due process.

## B.   Venue

Besides the jurisdictional challenge addressed above, Movants argue that dismissal is warranted because this Court is an improper venue. (Doc. 23, pp. 23–25.) Venue is proper if the case is filed in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Once a defendant moves to dismiss a claim for improper venue, "the plaintiff bears the burden of demonstrating that the venue selected is proper." *See, e.g.*, *Watson v. Cmty. Educ. Ctrs., Inc.*, No. 2:10-cv-778-36SPC, 2011 WL 3516150, at *2 (M.D. Fla. Aug. 11, 2011) (citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1998).

Plaintiffs assert venue is proper in this district because a substantial part of the events causing Plaintiffs' claims occurred in this district. (Doc. 1, ¶ 54; Doc. 100, p. 18.)

The inquiry on a motion to dismiss for improper venue centers on the "relevant activities of the defendant, not the plaintiff" to ensure a defendant is not "haled into a remote district having no real relationship to the dispute." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356–57 (S.D. Fla. 2009). The Court should consider "only those acts and omissions that have a close nexus to the wrong." *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003).

On review, the Court finds venue is proper in this district because a substantial part of the events causing Plaintiffs' claims occurred in this district. Specifically, Defendants sent direct mail advertisements to timeshare owners in this district inviting them to attend in-person presentations in this district. (*See* Doc. 100-7; *see also* Doc. 100, pp. 4–7.) And Defendants referred timeshare owners to an attorney with an office within this district and frequently communicated with the attorney while she was in this district. (*See* Doc. 100-9; *see also* Doc. 100, p. 4–7.) So venue is proper in this district.

However, while venue is proper in this district, the Court finds this case should be transferred to the Tampa Division. Local Rule 1.02(c) provides that all civil cases should be heard in the "Division encompassing the county or counties having the greatest nexus with the cause, giving due regard to the place where the claim arose and the residence or principal place of business of the parties." Here, the substantial conduct giving rise to this action occurred in Sarasota and Manatee counties, which both lie within the Tampa division of this district.[7] (*See* Doc. 100-7, ¶¶ 2–5; Doc. 100-9, ¶¶ 2, 8.) Therefore, in its

---

[7] Ms. Hayes, one of Plaintiffs' timeshare owners and a Sarasota, Florida resident, received a direct mail advertisement from MRC for an in-person sales presentation where

discretion, the Court finds the Tampa Division is the proper venue for this action to proceed. *See* Local Rule 1.02(e).

## C.    Transfer Venue

Beyond that, Movants also contend this case should be transferred to the U.S. District Court for the Western District of Missouri based on the "first-filed" rule or the 28 U.S.C. § 1404(a) factors. (Doc. 31, pp. 18–21.) The Court addresses each basis for transfer.

### 1.    The First-Filed Rule

First, Movants contend this case should be transferred under the first-filed rule because a similar action was first-filed in that venue—*King v. Wyndham Vacation Resorts, Inc.*, No. 6:18-cv-03319-MDH (W.D. Mo. 2018) ("**Missouri Action**"). (Doc. 31, pp. 18–21.) Plaintiffs counter that the instant action is distinct. (Doc. 100, pp. 19–20.)

Under the first-filed rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). In determining whether to transfer a case under the first-filed

---

MRC would explain how she could "recover 100% of the money [she] paid to purchase [her] timeshare." (Doc. 100-7, ¶¶ 2–4.) Ms. Hayes attended the in-person sales presentation which was conducted by MRC employees at the Homewood Suites in Sarasota, Florida. (*Id.* ¶¶ 5–6.) Additionally, Ms. Clapp, a Florida attorney, resides and has a law office in Lakewood Ranch, Florida. (Doc. 100-9, ¶¶ 2–7.) Ms. Clapp met with Mr. Hemingway and Mr. Tucker and agreed to accept client referrals for individuals "who had misrepresentation disputes with a timeshare company." (*Id.* ¶ 15.) Mr. Hemingway and Mr. Tucker communicated with Ms. Clapp while she was in Florida and Ms. Clapp was referred Florida clients. (*Id.* ¶¶ 23–31.) And before referring a client to Ms. Clapp, PTG would require a timeshare owner to complete a "Timeshare Misrepresentation Dispute Referral Form" which lists Ms. Clapp's Missouri and Lakewood Ranch, Florida office locations. (*Id.* at 8–12.)

rule, the court with the second-filed action typically considers: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Rudolph & Me, Inc. v. Ornament Cent., LLC*, No. 8:11-CV-670-T-33EAJ, 2011 WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011). The party objecting to the first-filed rule must prove "compelling circumstances" to warrant an exception to the rule. *Manuel*, 430 F.3d at 1135.

On review, the Court finds Plaintiffs met their burden of rebutting the first-filed rule. To be sure, the Missouri Action was filed first, but other considerations do not support transferring this action under the first-filed rule. In the Missouri Action, thirty-three individual plaintiffs brought claims under the Missouri Merchandising Practices Act against four Wyndham entities and several individuals for misrepresentations made in relation to the plaintiffs' purchase of timeshare properties. *See King*, Docs. 1, 1-2 (Sept. 28, 2018).

The two actions involve different parties and different issues. None of the Defendants here are parties to the Missouri Action and the individual plaintiffs in the Missouri Action are not parties to this suit. (*See* Doc. 100, p. 20.) Further, the plaintiffs in the Missouri Action brought claims under the Missouri Merchandising Practices Act while this case involves claims under the Lanham Act and Florida law. (*Id*.) The Court declines to transfer this action based on the first-first rule.

### 2.    Section 1404(a) Factors

Next, Movants contend transfer is appropriate under 28 U.S.C. § 1404(a). (Doc. 31, pp. 18–21.) "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may

have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Motions to transfer under § 1404(a) require a two-step inquiry. *S.E.C. v. BIH Corp.*, No. 2:10-cv-577-FtM-29DNF, 2011 WL 3862530, at *2 (M.D. Fla. Aug. 31, 2011). First, the Court must determine whether the case could have been brought in the transferee forum. *See BIH Corp.*, 2011 WL 3862530 at *2; *see also* 28 U.S.C. § 1404(a). If so, the Court balances the conveniences of the parties. *See BIH Corp*, 2011 WL 3862530 at *2. Movants must demonstrate that transfer is appropriate. *See In re Ricoh*, 870 F.2d at 575.

For the first step, Court looks to see if Plaintiffs could have sued in the Western District of Missouri. *See, e.g.*, *BIH Corp.*, 2011 WL 3862530 at *2. "An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject of the action; (2) venue is proper there; and (3) the defendant is amendable to process issuing out of the transferee court." *Seal Shield, LLC v. Otter Prods., LLC*, No. 6:13-cv-967-Orl-37DAB, 2013 WL 6017330, at *2 (M.D. Fla. Nov. 13, 2013) (quoting *Suomen Colorize Oy v. DISH Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011)). Here, this action could have been originally filed in the Western District of Missouri—all Defendants are Missouri citizens and the Western District of Missouri has subject matter jurisdiction over this action based on federal question jurisdiction. (*See* Doc. 1, ¶¶ 32–51.)

For the second step, the Court considers the convenience of the parties. While no single factor controls, courts consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to

compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1.

Upon consideration, the factors don't support transfer. For example, other than Defendants and their employees, Movants have identified no witnesses who reside outside Florida. (*See* Doc. 31, p. 19); *see also Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (explaining that the location of the witness is given diminished weight "when the witnesses . . . are employees of a party and their presence at trial can be obtained by that party"). And while some relevant documents and evidence are in Missouri, technology permits easy exchange of documents.  Further, this Court has several timeshare exit industry cases, it is familiar with the issues in this dispute. Ultimately, there is no district that will not inconvenience some parties and witnesses, but Plaintiffs' choice of forum is afforded great weight. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). So the § 1404(a) factors do not favor disrupting Plaintiffs' chosen forum. The Court declines to transfer this case.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and/or Venue, or in the Alternative to Transfer (Doc. 31) is **DENIED**.

2.    Movants shall file an answer to the Complaint (Doc. 1) by Thursday, **August 22, 2019**.

3.    The Clerk is **DIRECTED** to transfer this action to the Tampa Division of the U.S. District Court for the Middle District of Florida.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 8, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

-22-